ENTERPRISE TRADING CO. et al. v. BANK OF CROWELL. (No. 602.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1914.)

1. CORPORATIONS (§ 123*)—PLEDGES OF STOCK —EQUITABLE RIGHTS.

A pledgee of corporate stock has such an interest in the assets of the corporation as entitles him to invoke equitable relief against it and those acting for it to prevent the removal of its assets from the place of its domicile and its exchange for stock of another corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

2. CONTRACTS (§ 71*)—CONSIDERATION—FORBEARANCE.

A creditor's agreement to withhold suit against his debtor, followed by actual forbearance, is a good consideration to support a third party's promise to pay the debt, although no definite time of extension is expressly agreed on.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 295, 296, 298, 316–324; Dec. Dig. § 71.*]

3. FRAUDS, STATUTE OF (§ 33*) — PROMISE TO PAY DEBT OF ANOTHER—NEW CONSIDERATION—FORBEARANCE AGAINST CREDITOR OF THIRD PERSON.

C. and W., the latter as surety, executed a note to plaintiff bank, and, as collateral security, C. gave certain shares in a corporation, which thereafter and before the note was paid, by its directors, authorized its manager to sell its stock of goods in bulk for cash, notes, or certificates in another corporation, for the purpose of paying off its creditors. Upon the forbearance of threatened steps by the bank to

prevent removal of the goods, a stockholder and director orally promised that he would pay or see that the note to the bank was paid. *Held*, that such forbearance was a new consideration for the promise so as to take it out of the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

4. FRAUDS, STATUTE OF (§ 33*)—PROMISE TO PAY DEBT OF ANOTHER—ORIGINAL OR COLLATERAL PROMISE.

Such promise was an original promise of payment, irrespective of the liability of the principal debtor, and not a collateral promise to pay the debt of another, and, being supported by a good consideration, was not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

5. FRAUDS, STATUTE OF (§ 33*)—PROMISE TO PAY DEBT OF ANOTHER—NEW CONSIDERATION.

Where a creditor relinquishes some right upon a third person's promise to pay the debt, springing out of some new transaction or upon some substantial ground of a personal concern to the promisor, the consideration to the promisor takes the promise out of the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

6. CORPORATIONS (§ 333*)—LIABILITY OF MANAGER—CONVERSION.

Where shares of a corporation were given as collateral security for a note of a third person, and the holder, upon the promise of a stockholder and director that he would pay, or see that the note was paid, consented to removal of its stock of goods, their sale, and the application of the proceeds upon its debts, its manager was not liable for conversion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1451; Dec. Dig. § 333.*]

Appeal from District Court, Foard County; J. A. Nabers, Judge.

Action by the Bank of Crowell against the Enterprise Trading Company and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered in part and affirmed in part.

J. R. Stubblefield, of Eastland, and Cooper Sansom, of Georgetown, for appellants. Robert Cole and G. W. Walthall, both of Crowell, and Crudgington & Works, of Amarillo, for appellee.

HENDRICKS, J. This suit was instituted by the appellee, a banking copartnership, against the Enterprise Trading Company, alleged to be a corporation, P. S. Witherspoon, S. L. Cleaves, Frank Carrothers, and W. F. Magee, the appellants herein, in the district court of Foard county, praying for a judgment against the appellants, Witherspoon, Cleaves, Carrothers, and Magee, for the amount, principal, interest, and attorney's fees, due on a certain note executed by Witherspoon and Cleaves to plaintiff, the suit against said Carrothers and Magee having been based on an alleged verbal promise made by Carrothers to pay said note, and also allegations in the alternative against some of said appellants for the value of 10 shares of corporation stock held as collateral by plaintiff to the note above mentioned, alleging a conversion of a portion of the stock of goods by defendants Carrothers and Magee, owned by said Enterprise Trading Company.

Cleaves and Witherspoon, the latter as surety, executed the note in favor of the appellee bank, and Cleaves pledged to said bank, as collateral security, 10 shares of stock in the R. N. Magee Company, a private corporation, afterwards the Enterprise Trading Company, to secure the payment of said promissory note, and the record develops that in 1912, while the principal of said note was unpaid, and while the stock was still held as collateral security by said bank, the corporation, the Enterprise Trading Company, through its directors, commissioned and authorized the manager of the corporation "to make a sale of the dry goods * * * owned by it in bulk, for the sum of $11,000, or the invoice price of said goods, and to take in payment thereof cash or notes, or certificates of stock, in such manner as may be authorized by law, for the purpose of securing and eventually paying off" the creditors of said corporation.

At this time W. F. Magee was the president of this corporation, and F. W. Carrothers was a stockholder and director of the same, and negotiations in that year were thereafter entered into with other parties in a different part of the state, organizing a similar corporation, for the sale of the dry goods of said Enterprise Trading Company, to said new corporation, and to take in consideration for such sale the stock in said new corporation, the Thorndale Mercantile Company, which was finally consummated for $10,000 of the par value of said stock, and a note for $908.67, executed by one Gore, and which was 80 per cent. of the inventory cost of said dry goods. Some time in 1912, we presume during the pendency of the negotiations, and at a time when the goods were boxed preparatory to shipment, it developed that the Bank of Crowell, which was the pledgee of the 10 shares of stock in said Magee corporation, or Enterprise Trading Company, as collateral to said note, was remonstrating against the shipment of said dry goods and the removal of the same from the town of Crowell, and during this condition Mr. Carrothers, the appellant herein, discussed the matter with Mr. McFarland, the manager and acting vice president of said Bank of Crowell. Mr. McFarland testified:

"I told Mr. Carrothers when he came into the bank that I was not willing for the goods to be moved from here. He * * * said that the business was not doing much good here (meaning at Crowell), and that he and Magee would take the stock of goods down to Williamson or Milam county and organize another company down there, or put it in another con-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cern down there, and if they would be permitted to move the goods, and if I would not object to them moving them, they would pay me my money within 60 or 90 days. I told Mr. Carrothers the situation we were in with regard to this note with the stock attached, and told him that I would take legal steps to protect my rights."

Mr. McFarland agreed to forbear the institution of any suit in regard to the removal of the goods, and Mr. Carrothers promised that he would pay, or see that it was paid, the 'note executed by Cleaves and Witherspoon to the bank. The bank, in consideration of Carrothers' promise, did not institute the suit; the goods were shipped to a different part of the state, and transferred to the new corporation at 80 cents upon the dollar, and for which $10,000 of stock was issued by the new corporation and handled by Magee, the president of the company, who seemed in this matter to have acted principally as managing trustee for the Enterprise Trading Company, with the Gore note, as additional consideration, as stated. The jury found, in answer to a question submitted by the court, as upon special issues, that Carrothers promised to pay Sandifer, meaning, of course, the bank, the Cleaves-Witherspoon note, or see that Sandifer got his money within 60 or 90 days, in consideration that Sandifer would not object to the removal of the stock of dry goods from Crowell; and the judgment of the court against Carrothers upon this finding is earnestly challenged upon the ground that the promise is to answer for the debt of another, the enforcement of which is prevented by the statute of frauds, which, as we view it, is the only question worthy of serious consideration in this record.

One of appellants' subdivisional propositions is that, the bank "having no legal right to prevent the removal of the assets of the Enterprise Trading Company from Crowell, its agreement to forbear taking steps to institute legal proceedings upon any promise of Carrothers would not constitute an agreement upon which a valuable consideration could be predicated."

In what manner the "Magee Company," a corporation, became the Enterprise Trading Company, a corporation, is not exhibited, but the identity of the same is so treated in this record by all parties, likewise by the trial court in the proceeding below, as to preclude any doubt, but that the pledgee of the stock of the first-named corporation is entitled to the same rights against the Enterprise Trading Company which in some manner is the successor of the other.

[1] We believe that the law is well settled that a pledgee of corporate stock has such an interest in the assets of a corporation as in this instance would have entitled the bank to have invoked equitable relief against the corporation and those acting for it, to have prevented the removal of its assets from the place of its domicile, and the transmutation of its property into corporation stock of another corporation, which Carrothers informed Sandifer they contemplated doing, and with reference to which, as well as the removal of same, the goods having already been boxed for that purpose, Sandifer objected. Thompson says (volume 4, § 4241, Corporations):

"The pledgee had a right equal with the pledgor to appear and protect in the courts his interest in the stock and prevent a dissipation of corporate assets."

The appellant, however, says that if the pledgee had the right to prevent the removal of the assets and the conversion of the same, the exercise of that right should be based upon the precedent condition of an appeal, first to the corporation to prevent the contemplated illegal move. The Supreme Court of Georgia, in a well-considered case, Andrews Co. v. National Bank, 129 Ga. 53, 58 S. E. 633, 121 Am. St. Rep. 186, 12 Ann. Cas. 616, said:

"It is also contended by the defendant's counsel that the plaintiffs have no standing in court, because a stockholder, as such, could not sustain an action of this kind. * * * What the stockholders may compel the association to do, they [meaning the pledgees] cannot compel it to do. They cannot therefore be required to act through the association, but may bring an action on their own account, and in their own names, to protect their rights and interests as pledgees."

Reverting to the main proposition, Circuit Justice Goff said:

"We think it beyond question that the pledgee of stock has such an equitable interest in it as will entitle him to be heard in a court of equity concerning its preservation, and the protection of his interests therein, to the same extent, at least, as the stockholders pledging it would have." Gorman-Wright Co. et al. v. Wright, 134 Fed. 363, 67 C. C. A. 345.

The matter of an appeal to the governing body of the corporation as a prerequisite to the maintenance of the suit was not involved in that cause. See, also, on this question, Green v. Hedenberg, 159 Ill. 489, 48 N. E. 851, 50 Am. St. Rep. 178.

[2] Upon the proposition of a forbearance to sue, constituting a consideration, in this instance a detriment to the promisee, we quote Elliott on Contracts, vol. 1, § 235:

" * * * An agreement by a creditor to withhold suit against his debtor is a good consideration to support a promise by a third party to pay the debt, although no fixed and definite time of extension is expressly agreed on; and * * * if followed by actual forbearance for a reasonable time, this is a good consideration for a promise to pay the debt by a person other than the debtor."

See, also, Page on Contracts, vol. 1, p. 430, § 289.

[3] In this cause there is not an agreement of forbearance directly in favor of the debtors, owing the note to the bank, though the effect of the agreement operated to that extent; the agreement is to forbear the exercise of legal rights against a third person, a corporation, and its representatives interested therein. If the promise is collateral, and the original debt continues, and such promise is not one based upon some new consid-

eration to the promisor as to except it from the statute, of course it must be in writing. If there is no consideration for the promise, whether it is original or collateral, you are not troubled with the statute of frauds—it is nudum pactum.

The simple illustrations are as follows: If A. promises B. that if the latter will furnish goods to C. he, A., will guarantee the debt, the concurrent consideration constituted by furnishing the goods is of course sufficient, but the promise is collateral, and, if not in writing, is unenforceable. Again, if B. has already furnished the goods to C. subsequently to the creation of the debt, and subsequent to the delivery of the goods to C., A. guarantees that he will pay the antecedent debt if the latter will continue to furnish goods to C.—while here there is a new consideration and a new promise, and though a new contract, the effect is the same —it is still a promise to pay another's debt and must be in writing. Again, if B. sold and furnished to C. the goods, concurrently with the creation of the debt, but A., however, has not participated, but subsequently thereto, if C. is about to remove his goods from the state, and B. on that account is about to attach the same, with good grounds for that purpose, and A. were to promise B., if the latter would forbear the attachment, that he, A., would guarantee the debt, and B. forbears, the consideration is the same as in the other cases, but if not in writing, the statute of frauds again interferes. The first illustration is a concurrent promise upon a consideration when the debt is created; the second and third are those where the promises are upon a consideration and made subsequently, but the statute points to no distinction between a debt created at the time when the collateral promise is made and one made subsequently to the creation of the debt; the inquiry always is, not when the relation was created, but whether there is a debtor and surety with the primary and main purpose to pay the debt of another, with no independent consideration to the promisor; where there is a change in the form of the consideration, or a difference in the nature of the detriment to the promisee, whether it is by a sale of the goods, or a forbearance to sue, constituting the consideration to support the contract, as long as it is a collateral promise, and not in writing, with the main object for the benefit of the debtor, the statute prevents the enforcement.

There is considerable loose language upon the question of a new contract taking a case out of the statute of frauds, because forsooth it is based upon a subsequent contract and a new consideration. Though the promise is new and original—original in the sense it had no original connection with the debt—does not take the case out of the statute; neither because you vary the form of the consideration to the promisee, though created subsequently, does it make the prom-

ise new and original, in the sense of taking it out of the statute, as long as the principal object in view is to stand good for another's debt. "To say that it was new and original expresses no idea of any importance. Every promise is new and original that was never made before." Mallory v. Gillett, 21 N. Y. 415. The law does not discriminate between different promises according as the consideration may differ in the particular nature or kind. Same case, supra.

As stated, though you get by the question of the consideration to the promisee, which is always necessary to support any contract, and which in this character of case is generally some detriment to him, you still have left the question, What is the character of the contract between a creditor and a subsequent promisor, with reference to the payment of an antecedent debt, as that the promise is original, based upon a new contract, in the sense that an additional consideration, having due regard for the nature of the transaction, takes the obligation out of the statute where the original debt is intact, and the original debtor remains liable? " * * * Where the primary debt subsists, and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." White v. Rintoul, 108 N. Y. 222, 15 N. E. 320.

[4, 5] Was the promise of Carrothers such a collateral promise to pay the debt of another which, if not in writing, is within the statute of frauds? Or, was his promise such an independent agreement, blended with a purported benefit to himself, and made for the benefit of a third person, the corporation, as that the promise to pay the note was an independent obligation, not in the purview of the statute?

W. F. Magee, the president of the corporation, testified that Carrothers and himself were the trustees for the sale of the goods, and had the management of the assets of the corporation for that purpose. Negotiations between Mr. Magee and the representative of the new corporation organized, or to be organized, in South Texas, had developed to the point that Magee, and presumably Carrothers, had accepted a bid of about 80 cents on the dollar for all the dry goods constituting the bulk of the mercantile stock of the company, and they had been boxed preparatory to shipment for the purpose of delivery and the consummation of this trade. Carrothers, of course, was equitably interested to the extent of his stock in the corporate property, and necessarily interested as a stockholder in the successful ending of the corporation, in paying its debts, and, for aught this record shows, was entitled to reasonable compensation for his services as a managing trustee; and evidently, when he made the promise to

Sandifer to pay the debt, he viewed the matter of the removal of the goods and the conversion of the same into the stock of the new corporation as a benefit to himself, and we are constrained to construe it as an act, subserving his own purpose. Viewed from another angle, it was a consideration to the corporation, for the directors had authorized, as we view the record, Magee and Carrothers to perform the acts which Sandifer was strenuously objecting to being made final. The charter of the corporation designated Crowell, Foard county, Tex., as the situs of the business of the corporation. The jury, upon special verdict, finds that the stock of the corporation was worth $90 per share about the time that Carrothers made the promise to Sandifer, not based upon the book value, considering the debts of the corporation at the time the goods were removed and converted, but upon a popular conception of the value prior to that time, and based to some extent upon a prior sale of some of the stock. We are, however, convinced from the record that prior to the conditions which created the objections of Sandifer and the promise of Carrothers, there was a value to the stock, though probably more value was attached to it than of intrinsic worth, and there are reasonable grounds in good faith for a maintenance of a suit by a dissenting minority stockholder, or a pledgee of the stock, and a successful prosecution of the same, to prevent the removal of the goods, and the conversion of the same into other stock of another corporation; and such reasonable grounds, with the right based upon the same, if forborne, is a sufficient consideration to the promisee to sustain that side of the contract.

Where the promisee has relinquished some right in consideration of the other's promise, and the consideration springs out of some new transaction, or upon some substantial ground of a personal concern to the promisor, the trend of the authorities is to regard the same as sufficient consideration to the promisor, as that the promise is independent of the statute. The forbearance by the creditor of some legal right, in the usual case against the debtor, or in this case against the corporation, as well as against the representatives, who would necessarily have been included in the suit, is a sufficient consideration regarded as a detriment to the promisee; and we are rather impressed with the idea that a third person, in this instance the corporation and Carrothers himself, who as the representative of the corporation was about to remove the goods, when exempted from suit, would be a sufficient consideration stamping it as a new contract, however not necessary to decide, for the reason that the testimony shows, we think on a proper conception, that Carrothers, was not only subserving a purpose of the corporation, but was subserving a personal purpose and a personal matter of his own, and the same was the main purpose of the transaction actuating him in the promise, though the debt existed and would have been satisfied if the promise had been complied with. An analysis of this evidence clearly shows that Carrothers was not interested in paying Cleaves and Witherspoon's debt, imbued in any sense by a spirit of accommodation to them. The authorities announcing this rule are so numerous it is unnecessary to cite them.

There is another phase of the case which may be attempted to be relied upon by appellant, and that is the manner of the submission, and the answer of the jury on the special issues indicated by us in the foregoing part of the opinion. Sandifer testified that Carrothers said that if he, Sandifer, would forbear, he, Carrothers, would pay the debt within 60 or 90 days; and Thacher, who claimed to have overheard the conversation, testified that Carrothers "told Mr. Sandifer that if the goods were released he would see that he (Sandifer) got his money in 60 or 90 days." This latter testimony, on account of the variation in form of the promise, is evidently what actuated the trial court in submitting the matter in the manner he did; however, this language, under the peculiar status of the circumstances, considering the attitude of Carrothers to the corporation, and his personal interest involved and to be subserved, does not detract from his primary responsibility in adopting the debt of Cleaves and Witherspoon to the bank as his own debt; according to the conditions here, Carrothers did not mean, whatever the form in which he expressed it, that he would see that Witherspoon and Cleaves would pay the debt; he meant that he would pay it.

[6] We do not see any possible ground to hold Magee on the question of conversion; the bank consented to the removal of the goods and the transmutation of the same into the stock of the new corporation, in consideration of Carrothers' promise to pay the debt; the sale of the stock in the new corporation by Magee and Carrothers and the application of the proceeds of said sale upon the debts of the old corporation, notwithstanding a part of it was applied by Magee on debts of the latter corporation for which he was surety, could not, in the condition of this record, constitute a liability against Magee. The judgment against the corporation is practically admitted to be erroneous in the condition of the pleading; and we think is equally erroneous upon the evidence, without any legal principle applicable to the facts, and making it responsible under the cause of action alleged against it. The judgment is reversed and rendered as to W. F. Magee and the Enterprise Trading Company, and affirmed as to Carrothers, Cleaves, and Witherspoon, with the further order that the costs of this appeal be divided between Carrothers and the bank.

Reversed and rendered in part and affirmed in part.