FLETCHER v. PUCKETT. (No. 660.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 31, 1914.)

Frauds, Statute of (§ 33*)—Oral Promise to Pay Another's Debt—Benefit to Promisor.

An oral promise to pay for groceries and merchandise furnished to another was invalid under the statute of frauds, though the original debtor was the promisor's son and tenant, and the furnishing of the goods was incidentally beneficial to the promisor in that it enabled the tenant to live while making a crop.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

Appeal from Wilbarger County Court; J. A. Copeland, Judge.

Action by J. A. Puckett against F. C. Fletcher. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Storey & Warlick, of Vernon, for appellant. Berry, Stokes & Morgan, of Vernon, for appellee.

HENDRICKS, J. The appellee, J. A. Puckett, sued Harry Fletcher and F. C. Fletcher, upon a verified account for groceries and merchandise, and upon a trial to a jury a verdict was rendered in his favor against both codefendants, and from the judgment based upon the verdict, the defendant, F. C. Fletcher, has appealed.

The appellee, Puckett, was in the mercantile business and furnished the defendant Harry Fletcher, the son of F. C. Fletcher, the merchandise evidenced by the account. The latter interposed the statute of frauds, and the appellee, by supplemental petition, alleged that, though F. C. Fletcher verbally agreed to pay for the goods furnished Harry Fletcher, the said F. C. Fletcher was subserving a personal purpose of his own, in that he was the landlord of said Harry Fletcher, and that the merchandise was used by Harry Fletcher in making a crop on the premises of F. C. Fletcher, and that the latter, as a result of the tenancy, received a part of the said crop.

The application of the statute of frauds, interposed by F. C. Fletcher, is the only issue to be considered by this court, being convinced that the assignment based thereupon should be sustained.

The testimony of the appellee Puckett and his witnesses, which we take to be true on account of the verdict of the jury resolving it in his favor, clearly implies that F. C. Fletcher's promise was one of collateral liability for the payment of the merchandise. The testimony is that F. C. Fletcher agreed to "stand good" for the merchandise, and entirely excludes a primary liability.

What constitutes a benefit to the party orally promising to "stand good" for the debt of another, as that such party is sufficiently subserving a personal purpose of his own, in order to create such a consideration to him as to take the transaction out of the statute, has created a contrariety of views in the application of the law to particular instances as to apparently create considerable confusion and to make it difficult at times of application. It is not every benefit to a party promising, which may result to him as a consequence of the transaction, and which may be considered an element of legal consideration to the promisor, making the transaction independent, and taking the same out of the statute. The broad language of the able Justice Kent, in the celebrated case of Leonard v. Vredenburgh, 8 Johns. (N. Y.) 29, 5 Am. Dec. 317, in his classification of the character of contracts, which according to their nature were exempted from the statute, "upon the test simply of a new and original consideration of benefit or harm moving between the newly contracting parties,"

has given rise to considerable misapprehension in matters of this kind, according to later opinions by the Court of Appeals of New York and of other courts limiting the language of that great jurist. Muller v. Riviere, 59 Tex. 645, 46 Am. Rep. 291. The Court of Appeals of New York, in discussing this question, in the case of White v. Rintoul, 108 N. Y. 222, 15 N. E. 318, says that:

"The doctrine prevailing in this state, which serves to distinguish between original and collateral promises in cases arising under the statute of frauds, has been reached in three stages: Each was a definite and deliberate advance towards a more faithful observance of the statute, and an abandonment of efforts to narrow·the just and natural range of its application."

As stated, Chief Justice Kent had assumed in his definition as to a test of an original promise that it was founded on a new or further consideration of benefit or harm moving between the promisor and the promisee. The Court of Appeals of New York said in the case supra:

"There was found in this some inaccuracy of expression, for, since every promise must have some consideration, to be valid at common law, and that necessarily an inevitable consideration, wherever the debt to be paid antecedently existed, is always 'new' * * * because different from that of the primary debt, and since, also, such new consideration does frequently move between the newly contracting parties, giving benefit to promisor or harm to promisee, it became apparent that the terms of the definition were dangerously broad, and capable of a grave misapprehension, making it almost possible to say that a promise good at common law between the new parties was good, also, in spite of the statute."

Notwithstanding Justice Kent had under consideration the matter of an antecedent debt, it gave rise to uncertainty according to the courts and commentators, in cases where the promise was concurrently contracted with the original debt, the same as subsequently made to the creation of the original debt. Whether the debt was antecedent or concurrent to the promise of the third party, necessarily there must be a consideration to the promisee by some harm or detriment to him—otherwise it would be nudum pactum. In order, however, that it should be a valid contract out of the statute, there must not only be some detriment to the promisee, but the promisor must derive some benefit, and the personal concern to him creating this benefit is often in a twilight zone, which in applying the rule has led to the divergence indicated. Mr. Browne on Statute of Frauds (5th Ed.) p. 279, attempts to express the true rule in this manner:

"To state more exactly, if the circumstances of the transaction, which include the defendant's undertaking to pay the third party's debt, are such as to raise an independent legal obligation on the part of the defendant to pay that amount to the party, the fact of debt by the third party being material to the transaction only as ascertaining the amount to be so paid by the defendant, the statute does not apply."

The American & Eng. Enc. of Law (2d Ed.) vol. 29, pp. 930, 931, in discussing the propo-

sition of beneficial consideration, moving to the promisor, uses this language, stating a qualification to a general rule previously announced by that authority:

"On the other hand, where the' benefit to the promisor is not the primary object of his promise, but is merely incidental or indirect, the rule above stated does not apply, and the oral promise is invalid if the original debtor is not discharged."

The cases of Emerson v. Slater, 22 How. 28, 16 L. Ed. 360, and Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, illustrate the direct and immediate benefit to the party promising to create a sufficient consideration to him to remove the statute. In the latter case, Davis, an Englishman, was the principal stockholder in a mining corporation, to which he had advanced the sum of £5,000, to be repaid by the delivery to him of a certain number of tons of silver ore. The company became embarrassed and was having trouble in getting out the ore, and, under a contract made between the company and one Patrick, the latter was placed in control of the business, and for the purpose of continuing the work and applying the output of silver ore to the satisfaction of Davis' original debt, and to the repayment of money thereafter advanced by the latter. While in the pursuance of the work by Patrick and upon expressing a disinclination to continue for lack of means, Davis made to him certain promises, which were broken, and the Supreme Court of the United States held the defendant's agreement to be not within the statute, because "the promisor has a personal, immediate and pecuniary interest in the transaction, * * * and though operating upon the debt of a third party" was also "mainly for the benefit of the promisor."

In the case of Emerson v. Slater, supra, the former had a contract with the railway company to do certain bridge work to be finished by a certain date. The company became insolvent, and Emerson quit work and refused to continue. Slater, who was largely interested in the railway company as a stockholder, and also as the holder of a certain valuable contract, for an assignment of the proceeds of the railway company to the amount of $68,000, entered into a written contract with Emerson, binding him (Slater) to pay certain sums of money in consideration of the promise of the latter to resume the work and complete it by a certain date. Emerson was unable to complete the work within the time specified in the contract with Slater, and the latter extended the time of completion by an oral agreement, upon which Emerson sued Slater; the latter contending that the oral extension was within the statute of frauds. The Supreme Court said in effect if the work stopped there would be no proceeds to apply on the assignment. "In this view of the subject, it is manifest that the arrangement was one mainly to promote the individual interest of the defendant," previously announcing a rule, "Nothing is

better settled than the rule that, if there is a benefit to the defendant, and a loss to the plaintiff, consequential upon and directly resulting from • the defendant's promise in behalf of the plaintiff, there is a sufficient consideration moving from the plaintiff to enable the latter to maintain an action upon the promise." These are instances of immediate benefit and which may be further illustrated by the cases cited by appellee: Spencer v. Nalle, 143 S. W. 991; Blakeney v. Nalle & Co., 45 Tex. Civ. App. 635, 101 S. W. 875; Hoskins v. Velasco National Bank, 48 Tex. Civ. App. 246, 107 S. W. 598. While in the Blakeney-Nalle Case, supra, we are unable to understand exactly the status of Blakeney in promising to pay the note for another, we assume from the opinion of the court that the benefit was necessarily an immediate one, and upon which the Supreme Court of the state acted in denying the writ of error.

In the case of Brown v. National Bank, 88 Tex. 270, 31 S. W. 285, 33 L. R. A. 359, the facts disclose that W. O. Brown, a minor, was indebted to the Merchants' National Bank of Cleburne, both by note and overdraft; but before the indebtedness was created the cashier of the bank was unwilling to extend a line of credit on account of W. O. Brown's minority, and on account of the further fact that he was so largely indebted to E. Y. Brown, an uncle. E. Y. Brown was the president of the bank, and, according to the jury's verdict, E. Y. Brown requested the cashier to extend the credit and he would see that the money was paid; "and that he would not receive or collect a cent of the money W. O. Brown owed him until the bank was paid." The Supreme Court held that the promise of E. Y. Brown to answer for the indebtedness of W. O. Brown to the bank was within the statute of frauds, and no action could be maintained thereon because not in writing, and that if E. Y. Brown's liability depended solely upon that promise the action could not be sustained. (The action was sustained on the ground of a breach of the trust devolving upon E. Y. Brown as president of the bank.) W. O. Brown thereafter executed a preferential deed of trust, preferring E. Y. Brown over the bank. It is evident in that case, while not discussed by the Supreme Court, that E. Y. Brown considered the extensions of credit to W. O. Brown, his nephew, was in a sense a matter of benefit to him on account of his nephew owing him large sums of money. The successful conduct of his nephew's grocery business, which could not be brought about without capital, was in an indirect sense a consideration to him, and in a remote sense a pecuniary one.

In the case of Cobb v. Ward, 19 S. W. 250, where an employer agreed to pay for goods to any reasonable amount sold by a merchant to his employé, the statute of frauds was held by Judge Davidson to be a complete defense, irrespective of the indefiniteness of the promise.

In this case, of course the landlord was interested in the success of his tenant in raising a crop, there may be pecuniary advantage to him indirectly resulting therefrom, as well as a sentimental consideration being involved because he was the father of the tenant. However, the moral and sentimental consideration accompanying the transaction cannot be considered. It is true the son in this instance testified that he had to have the groceries in order to make the crop.

In the sense that he had to have sustenance in order to work and live and carry out the contract with his father, it is necessarily true; but not in the sense of an immediate benefit to the landlord in that it could be said that it was such a substantial concern to him as to support the promise as a consideration; and, if such a contract as this were permitted to stand, there are many contracts of similar nature which could be conceived by a logical conclusion, using this character of case as a premise, reducing the doctrine to an absurdity. A partner, necessarily interested in the success of the partnership business, and the profits resulting from the labor of the other partner, if he orally promises to "stand good" for the grocery bill of the other partner, under this character of doctrine would be bound. An employer, necessarily interested in the success of his own business, and in the work of his employé carrying out his contract of employment, who "stands good" for the grocery bill of this employé, by the application of this doctrine, would also have to pay.

In the cause of Enterprise Trading Co. v. Bank of Crowell, 167 S. W. 298, we applied the rule in favor of the plaintiff, suing the defendant, where the promise of the latter was such as to subserve a leading personal purpose, and was the main purpose of the transaction, actuating the defendant in making the agreement. In that cause the managing director and trustee of the corporation, who was about to remove the goods of the corporation to a different part of the state, for the purpose of carrying out a contract transferring the goods to another corporation and obtaining stock in the new corporation in lieu of the goods, promised orally to pay a pledgee of the stock of the old corporation a certain debt if the removal of said goods was not prevented. Carothers, in that case, was a stockholder and director of the corporation, and was authorized by said corporation, with another, to wind up the business of the same, convert its assets, and pay its debts; and said managing trustee being equitably interested in the assets of same, and entitled to a proportionate residue after the debts were paid, in making such a promise to pay the debt of another, to a pledgee

of the stock who had the right to restrain the conversion, was bound on account of subserving a personal concern to pay said debt. The record in that cause showed that Carothers was not actuated by a spirit of accommodation in promising to pay the debt of another, to the pledgee of the stock; but the main purpose and benefit was for himself and to the corporation in which he was interested, creating a consideration for the promise. If the landlord, as suggested in the argument, had been obligated to furnish the tenant the supplies by the merchant, the benefit to the landlord may have been such a substantial ground of personal concern as to constitute the benefit a consideration; he would have agreed to be liable for something he had himself agreed with the tenant to furnish. We are convinced, however, in this character of case that the benefit to a landlord on account of the sale of groceries to his tenant, and feed for his horses, as a benefit, and in constituting a consideration for his contract to pay for same, is entirely too remote; and, the facts being undisputed, we reverse and render the cause.

Reversed and rendered.