## ANDREWS CO. et al. v. NATIONAL BANK OF COLUMBUS.

1. Where A. obtains money from a bank and gives therefor a note under seal, signed by A. individually, and pledges, as collateral security for the payment of said note, stock in a corporation, which stock is the property of A., the debt represented by the note is the individual debt of A., and can not be enforced against the corporation, of which A. is the president; and this rule is not affected by general recitals in the petition that the money so obtained was for the use and benefit of the corporation, and was so understood at the time, and that the same was placed to the credit of the corporation on the books of the bank.
2. A pledgee of stock has the right to maintain an action, and to invoke the application of appropriate equitable remedies for the preservation of the assets of the company, and the prevention of their passing out of the hands of the corporation under terms of a sale which was the

result of a "combination and confederation" to destroy the value of the stock of the corporation, and a fraud on the rights of the pledgee.

3. The petition was not open to attack by demurrer upon the grounds that it was multifarious, and that there was a misjoinder of parties.

Argued May 22,—Decided August 10, 1907.

Equitable petition. Before H. H. Swift, judge pro hac vice. Muscogee superior court. June 27, 1906.

The National Bank of Columbus filed an equitable petition against the defendants, Andrews Co., a corporation, Ernest Andrews, Lane, Bagley, and others, as individuals, seeking to obtain judgment against them on certain promissory notes; and against these and other defendants, Schuessler and Roberts, to have an alleged fraudulent sale of the assets of the Andrews Co. to the last two named defendants set aside, and to have a receiver appointed to take charge of the assets of said company; and praying also that Ernest Andrews, Schuessler, and Roberts be required to account for all sales of goods belonging to said Andrews Co., made by them since the date of the alleged fraudulent transfer to said Schuessler and Roberts. The material allegations of the petition are as follows: That about the 27th day of August, 1900, Ernest Andrews, president of the Andrews Co., obtained from petitioner the sum of $2,500, as a loan; he "asked the officers of petitioner to take his individual note for this sum, . . but petitioner states that, although said note was taken from said Ernest Andrews individually, the same represented a debt of the Andrews Co." In September, 1900, said Andrews obtained from petitioner an additional loan of $2,500, "and petitioner avers that, although the said Ernest Andrews gave his individual note for the said last-mentioned sum, the same was also a debt of the said Andrews Co." In both of these instances the notes given to plaintiff were under seal, and signed by Ernest Andrews individually; and in each case he "deposited with petitioner $10,000 of the capital stock of said Andrews Co., which had been issued to him, as collateral security" for said loans. Again, in August, 1902, Ernest Andrews applied to petitioner for an additional loan of $5,000; but "petitioner already held the notes of the said Ernest Andrews for $5,000, as above stated, and was unwilling to take his note for any additional amounts, and he (Andrews) then stated to petitioner that the money was for the Andrews Co., but that he did

not want to increase its indebtedness, and that he would therefore procure the notes of certain employees of the corporation," to wit, Lane, Bagley, and three others, "for the sum of $1,000 each, which notes would be indorsed by him, and that he would deposit, as security therefor, stock in the Andrews Co. to the amount of $5,000, which had been issued to said parties." In pursuance of this agreement, petitioner advanced $5,000, and took the notes of said employees, Lane, Bagley, and others, each of said parties giving forty-four notes for the sum of $25, and one note for the sum of $24. All of said notes were under seal, and signed by said parties individually, and indorsed by Ernest Andrews; and $5,000 of stock in the Andrews Co., which had been issued to said parties, $1,000 each, was deposited as collateral security for said notes. In May, 1903, said Andrews represented to petitioner that the assets of the Andrews Co. amounted to $57,000, and that the liabilities were about $24,000, but that $10,000 of this indebtedness was due to W. T. Roberts, one of the directors of the Andrews Co., and that Roberts was willing to take $10,000 of preferred stock in said company in settlement of said debt, "the said Andrews stating at the time that the company would increase its capital stock to $40,000, including said preferred stock, and that the only effect of said preferred stock would be to entitle the holder thereof to an 8% dividend before any dividends or profits were paid to the other stockholders." And petitioner thereupon surrendered the certificates of stock held by it as collateral, and other certificates were delivered to it in lieu of those surrendered, the new certificates being marked "Common," and the stock of said company was increased to $40,000. Subsequently Andrews paid petitioner $500 on the notes signed by him, and petitioner surrendered $2,000 of the stock held by it as collateral, leaving $23,000 of the stock in the Andrews Co. in the hands of petitioner as security for the balance due on said notes. In the summer of 1903, Ernest Andrews entered into negotiations with certain creditors who held claims against the Andrews Co. for merchandise, and sought and obtained a settlement of about $10,000 of the indebtedness of the company for about $5,000 or $6,000, which amount was paid out of the money of the Andrews Co. Petitioner alleges that the total indebtedness of the firm for merchandise was about $16,000, and that, after the settlement above referred to, only $6,000 remained

unpaid. "Yet the said Ernest Andrews, for the purpose of holding said indebtedness against the assets of said corporation, and of defrauding petitioner, . . procured the creditors holding said claims to transfer and assign the same to B. A. Schuessler, a sister of said Andrews, intending thereby that the said Schuessler should hold said claims for the full amount of the face thereof against said Andrews Co." In November, 1903, all of said defendants "combined and confederated for the purpose of defeating petitioner in the collection of its debts, by depreciating and utterly destroying the value of the securities held by it; and in pursuance of said confederation the said Ernest Andrews and the Andrews Co. made a pretended sale of all the stock of goods and other assets of the Andrews Co. to the said Schuessler and Roberts; . . no money was paid by said parties in said purchase, . . but it was agreed between them that the purchase-price thereof should be the $10,000 of settled accounts which were held by the said Schuessler, and the $10,000 of preferred stock in said company held by said Roberts, and the assumption of the $6,000 of unsettled indebtedness against said Andrews Co. . . Petitioner avers that the $10,000 of preferred stock held by said Roberts did not entitle him to any priority in the distribution of the capital or assets of said corporation, but only to a dividend of 8% upon stock before any dividends or profits were paid to the other stockholders;" that the value of the assets of the company was about $44,000, "and that there was really no consideration for said sale, except the assumption of the $6,000 of the indebtedness of said corporation." And "petitioner further shows that by said pretended sale the said Ernest Andrews and the other stockholders of said company, well knowing that your petitioner held said $23,000 of stock in said company as collateral security, and that the same would be thereby rendered worthless, and intending thereby to destroy the security held by petitioner and to defeat petitioner in the collection of its just debt, prevented the said Andrews Co. from continuing its said business, although the same has been since conducted by the said Ernest Andrews in the same manner as before, as hereinbefore stated," viz., in the name of Schuessler and Roberts. The insolvency of Ernest Andrews, Lane, Bagley, and the other signers of the notes is also alleged. The plaintiff amended its petition by amplifying the allegations of

fraud. The defendants filed demurrers on various grounds,—among others, that the petition is multifarious, and that there is a misjoinder of parties defendant. The court overruled each of the demurrers, and the defendants excepted.

*Charlton E. Battle* and *Goetchius & Chappell,* for plaintiffs in error, cited Civil Code, §§2716, 2956, 3024, 3025, 4543, 4913, 4918; *Ga. R.* 27/418; 32/428; 42/124; 47/530; 56/144; 68/823; 69/665; 71/787; 74/762; 77/315; 80/327; 86/99; 88/100; 97/1, 258; 98/329; 101/569; 106/199; 107/184; 109/827; 110/330, 891; 111/818; 113/1071, 1146; 114/862; 115/7, 599; 116/795; 96/95; 94/113; 82/297; 75/294; 10 Cyc. 640, 696; High, Inj. §§ 131, 326, 1334; 1403; 2 Cook, Corp. (5th ed.) §712.

*J. H. Martin, A. W. Cozart,* and *John H. Lewis,* contra, cited *Ga. R.* 1/421; 6/172; 9/223; 71/168, 797; 74/454; 86/485; 118/789; 69/703; 100/193; 104/660; 98/288; 96/511; 122/333; Civil Code, §§ 1855, 2957, 3697; 141 Pa. St. 214 (12 L. R. A. 223); Hale, Torts, 364; 22 Am. & Eng. Enc. L. (2d ed.) 907; 18 Id. (1st ed.) 700; 10 Cyc. 648 (b); 8 Mo. App. 580; 12 Cent. Dig. col. 672, par. 573 (e), 1423; 26 Minn. 43; 159 Ill. 489; 26 Hun, 453 (12 L. R. A. 284).

BECK, J. (After stating the facts.)

1. When all of the allegations in the petition, relative to the creation of the debt represented by the notes attached to the petition, are considered together, no doubt remains that the debt is one from Ernest Andrews, Lane, and the other makers of the note, individually, and not the debt of the Andrews Co., the corporation, to the bank. This conclusion is not to be affected by the general recitals that the debt was one of the Andrews Co., and that the money obtained, which was the consideration of the notes, was for the use and benefit of the Andrews Co., and was placed to the credit of that company on the books of the bank. There are facts alleged in the petition of more weight and significance than these mere general allegations. In the first place, the bank took the notes of Ernest Andrews, Lane, and the other stockholders individually, and these notes are under seal. And again, the shares of stock of the corporation were deposited as collateral security for the payment, not of the debt of the company to the bank but for the payment of these notes. And in one paragraph of the petition it distinctly appears that after the

notes of Ernest Andrews, to the amount of $5,000, had been taken, and additional funds were needed, the bank "was unwilling to take his (Ernest Andrews') notes for any additional amount; and he then stated to your petitioner that the money was for the Andrews Co., but that he did not want to increase its indebtedness, and that he would therefore procure the notes of certain employees of the corporation, to wit, Lane, Bagley, and others, for the sum of $1,000 each, which notes would be indorsed by him, and that he would deposit as security therefor stock in the Andrews Co. to the amount of $5,000, which had been issued to said parties." Here again it appears that the notes of Lane, Bagley, and others were taken under seal, signed by them, individually, and that these notes were taken because the bank was unwilling to take Ernest Andrews' notes "for any additional amounts," and that "he did not want to increase [the corporation's] indebtedness." The authorities cited by the plaintiffs in error upon the point now under consideration contain nothing contrary to the conclusion which we have reached. In the case of *Merchants' Bank* v. *Central Bank*, 1 *Kelly*, 418, 44 Am. Dec. 665, it was said that "It may be stated generally, that where it appears on the face of the paper that the credit is not given to the agent, and the name of the principal is disclosed at the time of the transaction, and the act is within the powers of the agent, the principal is bound. The question whether the agent is bound does not affect this question, for there are many cases where both principal and agent are bound. Now, it is apparent on this bill of exchange [the paper sued on] that it was the intent of the parties to bind Scott Cray's principal; els why make it payable to him as agent, and why take his endorsement as agent? It is still more manifest that he does appear to act as agent. The testimony upon the trial, too, is that the name of his principal was disclosed to the Central Bank at the time the bill was discounted." If this excerpt from the opinion in the case last cited is not sufficient to show an entirely different state of facts from those set forth in the case at bar, the reading of the entire case will make the difference clear and distinc

It is unnecessary to discuss the cases cited by the plaintiffs in error in detail. The case last above referred to and the case of Third National Bank *v.* Van Haagen Mfg. Co., 141 Penn. St. 214, 21 Atl. 598, 12 L. R. A. 223, seems to be most confidently

relied upon by counsel. The latter case lays down merely the broad ruling that a loan of money to a corporation will render it liable for the debt, although the note of an individual instead of the note of the corporation was taken therefor, because supposed to be better security. In the case at bar, we hold as a matter of law, under the allegations in the petition, that the loan of money was not to the corporation but to the individuals. The other cases cited in the brief of counsel for the plaintiffs in error are easily distinguishable from the instant case. And while we do not put our ruling, upon the question immediately under consideration, upon the fact that the notes given by Ernest Andrews, Lane, and others were under seal, it is not to be concluded that we regard that feature of the case as unimportant. In the case of *Merchants' Bank* v. *Central Bank*, supra, it is said, "The inference drawn from the paper is, that Scott Cray acted as agent for some person, or corporation; but who, or what, does not appear. The name of his principal does not appear. The general rule is this: in order to bind a principal, on a contract made by an agent, it must purport, on its face, to be the contract of the principal; and his name must be inserted in it. It is not enough that the agent be described as such in the instrument. Story on Agency, sec. 147; Paley on Agency, by Lloyd, 180, 181, 182; 2 Kent, 629, 3d ed. This rule applies, more particularly, to solemn instruments under seal; and as to them, to use the language of Judge Story, it is 'regularly true,' but not universally true in all its extent. For, so far as regards instruments under seal, there are some exceptions to some of the requirements of the rule. Although the rule is thus strict as to sealed instruments, yet a more liberal rule obtains as to unsolemn instruments, especially commercial and maritime contracts." See also *Van Dyke* v. *Van Dyke*, 123 *Ga.* 686, 51 S. E. 582, and authorities there cited.

2. Having reached the conclusion that the debt represented by the notes was the individual debt of the signers of these notes, we have now to decide whether the payee and holder of those notes, who was the pledgee of a majority of the shares of stock of the Andrews Co., was in a position to invoke the equitable relief against the corporation to prevent it and other parties from consummating a fraudulent sale and transfer of the assets of the corporation, whereby the stock pledged would be rendered valueless.

Reference to the statement of facts will make it appear how this sale and transfer was to be effected. That the transaction between the corporation on the one side, and Schuessler and Roberts on the other, was not only tainted, but saturated with fraud, is undeniable if the allegations of the petition are true; and they are to be so taken as against the demurrer. It is not necessary for us to decide what might have been the rights and remedies of the petitioner had it been a stockholder of the Andrews Co., or had it been a creditor of the same. Had it been a stockholder, owning a majority of the shares of stock, and having a voice in the control and direction of the affairs of the corporation, it might possibly have been compelled to resort to a different procedure more peculiarly adapted to the righting of the wrong about to be inflicted upon a stockholder by an unauthorized act of the corporation, tending to impair and destroy the value of his shares of stock. Or, if the bank had been a creditor of the corporation, it might not have been able to proceed against the corporation, or the parties to whom the corporation made a pretended sale of all its assets, until after its claim was reduced to judgment, unless it was proceeding under the provisions of the Civil Code, § 2716, and had put itself in a position to invoke the remedies provided thereby. But it is neither a creditor nor a stockholder in the full sense of that word. In both the briefs for plaintiffs and defendant in error it is considered as a pledgee of stock, holding the shares of stock as collateral security for the payment of a debt. And it is as bearing this relation to the corporation, the validity of whose acts are attacked, that we are to treat it, and to decide whether or not it is entitled to the aid of a court of equity in setting aside a sale alleged to be fraudulent, and charged to have been the result of a combination and conspiracy "for the purpose of defeating petitioner in the collection of its debts by depreciating and utterly destroying the value of the securities held by it."

Counsel for plaintiffs in error contend that if it appears that petitioner is neither a stockholder nor a creditor of the Andrews Co., it must follow that it is not entitled to maintain the present action. But as we view it, the fact of its being neither a stockholder nor a creditor of the corporation removes all doubt as to its right to equitable relief at this time. Had it been a stockholder, it might, as we have said, have had some voice in the control and

direction of the affairs of the corporation; had it been a creditor, it might have reduced its claim to judgment, and proceeded against the purchasers under the fraudulent sale of the assets of the corporation; but being merely a pledgee of the stock, holding debts against individual stockholders, it can not have adequate relief except in an action of this nature against the corporation, the stockholders, and the parties who "combined. and confederated" with them to depreciate and destroy the value of the stock pledged. Any kind of a proceeding at common law would have required a multiplicity of suits and a circuity of action. "Pledgeè of stock has the right to maintain an action for the preservation of the assets of the company." 22 Am. and Eng. Enc. Law (2d ed.), 907; 10 Cyc. 648. "Pledgees of shares of stock have such interest in the corporation as to entitle them to object to the act of their pledgors in turning property of the corporation over to another stockholder in payment of shares of stock." St. Louis Stoneware Co. v. Partridge, 8 Mo. App. 580; 12 Cent. Dig. par. 573 (e). This doctrine is applied by the Supreme Court of Minnesota in the case of Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, where it is said: "The holders of the stock, whether holding as general owners or as pledgees, are therefore interested in the preservation of the corporate property, and in preventing it from passing out of the hands of the corporation. Stockholders do not have an 'interest' in the corporate real estate, in the sense in which the word 'interest' is commonly used in that connection; for such real estate is the property of the corporation. For this reason we think that the court below has used the word 'interest' in this finding inaccurately. But this is not important. Upon the facts found, and the preceding conclusions of law, the plaintiffs, as holders of the stock, are interested in the preservation of the corporate property, and in preventing it from passing out of the hands of the corporation. If this is so, they have a right to take legal means to preserve the property, to prevent it from being lost to the corporation, or its value from being impaired. . . It is also contended by the defendant's counsel that the plaintiffs have no standing in court, because a stockholder, as such, could not sustain an action of this kind. It is an answer to this to say that, as remarked by the counsel in another part of his brief, the plaintiffs, though they hold the stock, are not stockholders, but pled-

gees merely, and therefore they can not exercise the control over the association which stockholders can. What the stockholders may compel the association to do, they can not compel it to do. They can not, therefore, be required to act through the association, but may bring an action on their own account, and in their own names, to protect their rights and interests as pledgees."

If we have stated the correct doctrine as to the right of pledgees of stock in cases like that stated in this petition, the court did not err in overruling the demurrers of any of the defendants, which were general in their nature; though it must follow as a matter of course, from what we have said in this opinion, that the plaintiff is not entitled to a judgment upon its notes against the Andrews Co., and so much of the prayer of the petition as seeks this particular relief against the corporation must be unavailing, however righteous the other demands in the petition may be.

3. But the mere fact that a part of the remedy and relief sought is not appropriate does not have the effect to render the bill multifarious. Nor was there a misjoinder of parties. The corporation whose assets were transferred by the fraudulent sale resulting from a wrongful "combination and conspiracy," its stockholders, and the other parties to the alleged pretended and wrongful sale were all proper parties. And especially W. T. Roberts and Mrs. Schuessler should have been joined as parties defendant; and if they have so misappropriated and wasted any of the assets obtained by the alleged wrongful sale, the petitioner would be entitled to an accounting as against them. The respective rights of Mrs. Schuessler and Roberts as creditors of the corporation, and of Roberts as a creditor or holder of preferred stock, if he be one, and of petitioners may be all adjusted according to the priorities of their claims upon the final winding up of the business of the corporation, and the distribution of its assets.

*Judgment affirmed. All the Justices concur.*