JAMES B. MURRIN, Respondent, *v.* ARCHBALD CONSOLIDATED COAL COMPANY et al., Appellants.

*Corporations — stockholders — pledge — when corporation may not transfer its property and assets to another corporation — when pledgee of stock may resist such transfer.*

1. In the absence of a statute permitting it, no corporation against the protest of a stockholder, may transfer all its property and assets to another corporation, to the end that the latter may take its place and carry on its business unless the corporation is insolvent and the sale is effected to save its stockholders from further loss.

2. Although not a stockholder at the time of such a sale, a pledgee of a majority of stock may, when he later acquires the pledged stock, resist the sale, where it appears that the action was taken, not to benefit the corporation, but to injure the pledgee by depriving him of what he was entitled to acquire when the pledge was sold. The consent of the pledgor did not estop him, since at the time it was given there was no privity between them.

*Murrin* v. *Archbald Consolidated Coal Co.*, 196 App. Div. 107, affirmed.

(Argued October 4, 1921; decided December 6, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 8, 1921, which affirmed an order of Special Term granting a motion for an injunction *pendente lite.*

The complaint alleged that prior to October 25, 1919, the plaintiff Murrin owned a lease of a coal property known as the Edgerton lease, the property comprising about 2,300 acres situated in the anthracite region of Pennsylvania. Newton was then promoting the Archbald Consolidated Coal Company as a holding cor-

poration to hold the stock of the Archbald Coal Company which owned a lease adjoining the Edgerton lease. Newton desired to acquire the Edgerton lease to be operated with the coal property already owned by the Archbald Coal Company. Early in the month of October, 1919, the bond house of Blodget & Company in New York, after negotiations with Newton, underwrote or purchased an issue of $600,000 of bonds of the Archbald Consolidated Coal Company, which is still outstanding. On October 25, 1919, Murrin sold the Edgerton lease to Newton for $100,000, $25,000 being in cash and $75,000 in notes. The Edgerton lease, at Newton's request, was transferred by Murrin to the Archbald Coal Company. The security given to Murrin for the $75,000 in notes was 72,500 shares of the common stock of the Archbald Consolidated Coal Company, the holding company organized by Newton. This was and is a majority of the stock, the total issue being 110,000 shares of the par value of $10, there being no preferred stock. The notes to plaintiff were not paid when due, and in March, 1920, after two or three renewals, it appeared unlikely that Newton would be able to pay the consolidated note for $75,000, due April 1, 1920. Blodget & Company knew that Newton would probably default. In order to protect their interests Blodget & Company, with the consent of Newton, formed a new corporation under the laws of the state of Delaware, with an authorized issue of $200,000 of preferred stock and $200,000 of common stock with equal voting power. It was provided that the common stock of the old corporation might be exchanged for the common stock of the new, share for share. With the vote of Newton as record owner of the 72,500 shares of the old company pledged for the payment of plaintiff's notes all the assets of the Consolidated Coal Company including the stock of the Archbald Coal Company were sold to the new company in consideration of an equal number of shares of the common stock of the new company. The organization of the new corporation put it in the power of Blodget & Company to control the corporation through purchase

of the authorized preferred stock. Upon these facts the plaintiff has brought this action to compel the Archbald Coal Corporation to reconvey to the Archbald Consolidated Coal Company all of the assets of said company including the stock of the Archbald Coal Company. This would leave the plaintiff in control of the corporation and the assets that are now held by the coal corporation through his ownership of the majority stock of the Consolidated Coal Company pledged to him as security for his unpaid notes.

The following questions were certified: " 1. Does the complaint state facts sufficient to constitute a cause of action? 2. Upon the facts stated in the complaint and affidavits, was the injunction *pendente lite* granted herein authorized? "

*George L. Ingraham, Ernest G. Fifield* and *Howard C. Reid* for appellant.

*William C. Cannon* and *Harold W. Bissell* for respondent.

*Per Curiam.* The order of the Appellate Division should be affirmed, with costs, and the questions certified answered in the affirmative.

Neither in the complaint nor in the affidavits on the motion for a temporary injunction are we given any information as to the laws of the state of Delaware with regard to the sale of all the assets of one corporation to another. We must assume that these laws are similar to the general rules prevailing in this state, excluding from consideration any peculiar statutory provisions. If the act of the corporation was *ultra vires*, it was a breach of the implied contract between it and its stockholders which they might resist. In the absence of a statute permitting it, no corporation, against the protest of a stockholder, may transfer all its property and assets to another corporation, to the end that the latter may take its place and carry on its business. This is a practical dissolution of the first corporation. (*People* v. *Ballard*, 134 N. Y. 269.) At least this may not be done unless

the corporation is insolvent and the sale is effected to save its stockholders from further loss.

Although the plaintiff was not a stockholder at the time of the sale, he had such an interest in the stock to the knowledge of every one, that when he later acquired the pledged stock, he might under the peculiar circumstances of this case equally resist. He, in reality, was the one injured. By a conspiracy he was deprived of the control of the corporation, which control formed part of the value of the pledge. The action was taken, not to benefit the corporation but to injure the plaintiff and to deprive him of what he was entitled to acquire when the pledge was sold. The consent of Newton did not estop him. At the time it was given there was no privity between them.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, MC-LAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order affirmed.