# BROWN COUNTY BANK v. FREIE PRESSE PRINTING COMPANY AND OTHERS.[1]

March 23, 1928.

No. 26,373.

**Award of money damages to pledgee for destroying value of stock pledged to it was proper.**

Stock of a South Dakota corporation was pledged to the plaintiff as security for a note with the knowledge of the corporation. Afterwards a corporation was organized in Minnesota and the assets of the South Dakota corporation were taken over by it without consideration. Such assets constituted the basis of its business. The pledgor severed his connection with the Minnesota corporation. The Minnesota corporation and the other defendants, its officers, treated the South Dakota corporation as not in existence, its assets as belonging to the Minnesota corporation, the pledgor as having no right in stock of the new corporation, and the pledged stock as representing nothing. The plaintiff bank was without knowledge of the formation of the new corporation until some time after its organization. The defendants knew that the note was unpaid. The court granted plaintiff relief by awarding damages as upon a conversion by the defendants of the pledged stock. *Held* that such relief was proper.

Corporations, 14 C. J. p. 739 n. 22; p. 924 n. 11; p. 929 n. 46.

The defendants, other than the defendant Conrad Kornmann, appealed from an order of the district court for Brown county, Olsen, J. denying their motion for a new trial. Affirmed.

*Streissguth & Fordyce* and *Pfaender & Glotzbach,* for appellants.
*Somsen, Dempsey & Flor,* for respondent.

DIBELL, J.

This is an action in equity brought by the plaintiff, the pledgee of certain stock of defendant Freie Presse Printing Company of South Dakota, against Kornmann, its pledgor, the South Dakota corporation, the Freie Presse Printing Company of New Ulm, Minnesota, which succeeded to the assets of the South Dakota corporation, and

[1] Reported in 218 N. W. 557.

its officers. The court gave relief by a money judgment as for damages for the conversion of the pledged stock. The defendants other than defendant Kornmann, the pledgor, appealed from the order denying their motion for a new trial.

The controlling facts are few. Prior to February, 1920, the defendant Freie Presse Printing Company, a South Dakota corporation, published the Dakota Freie Presse, a German paper, at Aberdeen, South Dakota. Its capital stock was $50,000, divided into shares of $50 each. The defendant F. W. Sallet owned all of the stock except a few qualifying shares given to members of his family. It was a one-man corporation.

In February, 1920, the corporation sold its printing presses and machinery, and from then on the issued stock was considered as reduced to $40,000 because of such sale, though there was no formal cancelation of stock. About March 1 Sallet entered into an agreement to sell the stock for $35,000 to Kornmann. Just how he was to pay for it is not clear. It was anticipated that profits would be made and applied on the purchase price. Kornmann was without ready money, and for the purpose of enabling him to borrow there was issued to him $5,000 in stock. It was understood that he would use this stock as collateral. He borrowed $3,000 of the plaintiff bank on March 22, 1920, gave his note, and pledged the stock as security. Before making the loan the bank made inquiry of Sallet and was informed in substance that the stock was worth par.

From then on the paper was printed at New Ulm. Kornmann was in charge. In April, 1922, it was determined to dissolve the South Dakota corporation and to incorporate under the laws of Minnesota. A corporation was organized in Minnesota under the name of Freie Presse Printing Company of New Ulm. This was in May, 1922. The agreement between Sallet and Kornmann for the purchase of the stock of the old corporation was rescinded. The old corporation was treated as out of existence, though there was no formal dissolution. Sallet assumed to be the owner of all the stock of the new corporation and entered into a contract for the sale of it to various persons. This contract was not carried out. All the property of the South Dakota corporation was taken over by the

Minnesota corporation and constituted the basis of its business. The plaintiff did not know of this transaction until some time afterwards. The defendants knew of the pledge and knew the debt had not been paid. In January, 1923, Kornmann severed his connection with the company. The position of Sallet at the trial, and that may be taken as the attitude of the other defendants, was that the stock of the South Dakota corporation was "all wiped out," including the $5,000 issued to Kornmann; that he was not entitled to any stock in the Minnesota corporation; that the collateral stock was "wiped out" because nothing was received in payment for it; that the old corporation was not in existence; that it was "dead;" that its assets belonged to the Minnesota corporation; and that Kornmann had no interest in its stock.

Under these circumstances the plaintiff was entitled to relief. The court gave relief such as would be given if the property of the old corporation had been converted by the defendants' participating in the transaction, and awarded money damages measured by the amount due on the note which was less than the value of the pledged stock when taken.

The following cases, some of them only indirectly, suggest the propriety of such relief. Allen v. American B. & L. Assn. 49 Minn. 544, 52 N. W. 144, 32 A. S. R. 574; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276; Segal v. Davis, 166 Minn. 265, 207 N. W. 620; Kremer v. Public Drug Co. 41 S. D. 365, 170 N. W. 571; Forrester v. Boston & Mont. Min. Co. 21 Mont. 544, 55 P. 229, 353; Koehler v. St. Mary's Brg. Co. 228 Pa. 648, 77 A. 1016, 139 A. S. R. 1024; Murrin v. Archbald C. C. Co. 196 App. Div. 107, 187 N. Y. S. 606; Andrews Co. v. Nat. Bank, 129 Ga. 53, 58 S. E. 633, 121 A. S. R. 186, 12 Ann. Cas. 616; Gorman-Wright Co. v. Wright (C. C. A.) 134 F. 363.

The plaintiff may have been entitled to different relief. Perhaps it might have gone into South Dakota and had a receiver of the old corporation appointed and then have instituted litigation in Minnesota to recover the value of the assets taken over by the Minnesota corporation. Perhaps an equivalent amount of stock in the new corporation might have been adjudged subject to the pledge to the plaintiff. If so, it would have resulted in giving the plaintiff a

pledge of stock subject to a stockholder's double liability.. Either of these suggested methods involved litigation and delay, and there may not have been full relief at the end. The relief was not greater than plaintiff should have, and not unjust to the Minnesota corporation.

In holding as we do there is no trenching upon the doctrine, not applicable here, of those cases holding under particular circumstances that a wronged stockholder should sue in a representative capacity or in the name of his corporation and not individually. See Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731; Venner v. G. N. Ry. Co. 117 Minn. 447, 136 N. W. 271; Morrill v. Little Falls Mfg. Co. 46 Minn. 260, 48 N. W. 1124; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276; 14 C. J. 924, 929.

We find no error in the court's refusal to make amended findings. There was no laches preventing recovery, and a finding was not required. A finding on the question of fraud was not necessary. Fraud was not the basis of the action. The defendants did not commit fraud. They insisted on rights which they did not have as against the plaintiff bank. We do not say that Kornmann had rights which were denied him.

It is evident that the parties did not have a clear understanding of the details of the transaction nor of the rights of the plaintiff. They did not always appreciate the basic character of a corporation or corporate management, or the rights of stockholders, or the legal relationship of the two corporations. The facts recited show sufficiently the situation.

Order affirmed.