# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## CARLTON A. CRUMP, N. E. COGBILL, AND OTHERS V. SHERLOCK BRONSON AND T. JUSTIN MOORE, RECEIVERS, ETC.

June 10, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Kirsh & Bazile*, for the appellants.

*Archer L. Jones, David A. Harrison, Jr.*, and *James O. Heflin*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The bill in this cause was filed by Bronson and Moore, receivers of the American Bank and Trust Company against Hopewell Oil Company, Incorporated, Carlton A. Crump and N. E. Cogbill.

The bill alleged that the American Bank and Trust Company of Richmond, Virginia, had become insolvent, and that the complainants had been appointed receivers for that bank; that prior to the insolvency of the bank the Hopewell Bank and Trust Company, of Hopewell, Virginia, had loaned five thousand dollars to one Herbert M. Ford and Ira L. Newmon, for which one hundred and fifty shares of the capital stock of the Hopewell Oil Company, Inc., had been deposited as collateral; that the Richmond Trust Company had become the holder of the note and collateral, and that subsequently the American Bank and Trust Company became the holder of the note with its collateral. The bill further alleged that Ford and Newmon had failed to pay the note, and that after the insolvency of the American Bank and Trust Company, to-wit, on August 10, 1934, the receivers of the American Bank and Trust Company sold the stock and purchased it for seventeen hundred and seventy-five dollars, which sum, less attorney's fees, etc., was credited on the back of the note, with the result that something over six thousand dollars remained due on the note; that on August 10, 1934, the receivers became the owners

of the stock and entitled to all of the rights of stockholders in the Hopewell Oil Company, Incorporated.

The bill also alleged that the one hundred and fifty shares of stock of the Hopewell Oil Company, Incorporated, which the receivers had thus acquired, had, prior to their acquisition of the same, been in the name of Herbert M. Ford, who was one of the organizers of the Hopewell Oil Company, Incorporated, and had acquired the one hundred and fifty shares of stock as a result of the organization of the company and a later re-organization.

The bill then alleged that sometime during the year 1931, or 1932, Carlton A. Crump and Herbert M. Ford were the owners of the majority of the stock of the corporation and constituted a majority of the board of directors; that they purchased, with the assets of the corporation, all of the interest in the corporation of one G. R. Barksdale, who owned one-third of the capital stock of the corporation; and that thereupon the stock became treasury stock.

The bill further alleged that during the time the one hundred and fifty shares of stock were deposited as collateral with the American Bank and Trust Company, the said Carlton A. Crump and Herbert M. Ford fraudulently caused to be issued five shares of the treasury stock to the defendant, N. E. Cogbill, who was not entitled to the same, and also transferred twenty-five shares of said treasury stock to the defendant, Carlton A. Crump, who was alleged to have had no claim thereto.

The bill also alleged that the defendant, Carlton A. Crump, through the collusion of Herbert M. Ford and N. E. Cogbill, had voted himself excessive sums out of the assets of the corporation under the guise of salary, and that, during the year 1934, Carlton A. Crump had wrongfully converted three thousand dollars of the assets of the corporation to his own use by the sale to the corporation of a note for that sum made by Herbert M. Ford, which note was worthless.

The bill then prayed for a receivership of the corporation and for relief against the defendants, Carlton A. Crump and N. E. Cogbill.

The Hopewell Oil Company, Incorporated, Crump and Cogbill filed a plea in abatement to the bill, on the ground that the complainants were not stockholders of the Hopewell Oil Company, Incorporated, but that the stock was registered in the name of one D. W. Durrett, and that prior to the institution of the suit Durrett had sold the stock to Herbert M. Ford. Thereupon, a supplemental bill was filed, and Durrett, who held the stock as the nominee of the complainants, was made a party complainant.

The court overruled the plea in abatement and thereupon the defendants filed their respective answers, denying *in toto* the allegations of the bill. The cause was heard upon the bill of complaint, the answers thereto and the depositions of witnesses.

On December 9, 1935, the chancellor entered a decree in which he cancelled and annulled the certificates for the five shares of stock issued to Cogbill and the twenty-five shares of stock issued to Crump, entered a personal judgment against Crump in the sum of $3,000, and referred to a commissioner in chancery the question of the legality of the payment to Crump by the corporation of salary for the years ending May 31, 1934, and May 31, 1935. From that decree this appeal was allowed.

The conclusion of the chancellor was reached upon conflicting evidence, and unless there is error of law disclosed by the record, his finding is entitled to great weight.

The record discloses that in 1916 the Hopewell Oil Company, Incorporated, was organized for the purpose of dealing in the wholesale distribution of petroleum products in the city of Hopewell and vicinity. The capital stock consisted of four hundred and fifty shares of the par value of $100 each. The stock was divided into three parts and the holders thereof were Carlton A. Crump, Herbert M. Ford and G. A. Barksdale. These three also constituted the board of directors.

In 1931 Barksdale sold his interest in the Hopewell Oil Company, Incorporated, for the sum of $12,000. Upon the consumation of this transaction the corporation cancelled one hundred and twenty shares of the stock so purchased, and the re-

maining thirty shares were held as treasury stock of the corporation.

At the time of this transaction Ford was indebted to the bank in the sum of $5,000. As collateral, to secure the payment of his note, he had pledged all of his stock in the corporation. Ford defaulted in the payment of his note and the collateral was sold in due course and purchased by complainants for the sum of $1,775. The stock certificate was thereupon issued in the name of D. W. Durrett, who was the nominee of the complainants, and Durrett was duly elected a director of the corporation.

We think the record clearly shows that prior to the acquisition of the stock by complainants, in anticipation of such acquisition, Crump and Ford, who in reality were the corporation, conceived the idea of vesting in Crump absolute control of the corporate affairs. Accordingly, a meeting of the directors (that is, Crump and Ford) was held and the thirty shares of stock held in the treasury of the corporation were ordered issued to Crump and N. E. Cogbill, a truck driver of the corporation, on the alleged ground that they had performed extra services for the corporation. As a matter of fact, no stock was ever delivered to Cogbill, for the reason given by Crump that Cogbill was indebted to him and he held the stock as security for his debt. It is apparent that this transaction, if permitted to stand, rendered the stock of complainants practically worthless. It also appears that Crump and Ford, as directors, voted Crump a salary which exceeded the net income of the corporation.

After the acquisition of the stock by the complainants, Ford (who had secured his discharge in bankruptcy) secured from Durrett, representing the complainants, an option to repurchase the same. The consideration to be paid was the amount due by Ford to the complainants. After securing the option, Ford demanded of Crump that he comply with their agreement that he, Ford, be given fifteen shares of the stock issued to Crump and Cogbill. Crump declined to accede to this request on two grounds, viz., that Ford had failed to list the stock in his bankruptcy proceeding, and further, on the

ground that the records of the corporation disclosed that he was the owner of the stock and therefore he would rely upon the records. It was at this juncture that Ford divulged to the complainants the state of affairs, and thereupon, this suit was instituted.

Before discussing the questions of law raised by appellants, we deem it proper to state that the record is replete with evidence which sustains the holding of the chancellor that fraud in fact and in law upon the part of Crump and Ford is plainly apparent.

It is assigned as error that the court erred "in permitting the complainants to maintain this suit against your petitioners, for the reason that they did not become stockholders of the Hopewell Oil Company, Incorporated, until August 10, 1934, which was long after the transaction complained of in the bill had occurred; and when they acquired title to the stock formerly owned by Herbert M. Ford, who was estopped from complaining of the matters alleged in the bill, they likewise were estopped to complain of the same."

It may be true, as contended by counsel for appellants, that a purchaser of stock stands on no higher ground than his vendor. But that is not the case. Complainant is not a purchaser from Ford. Complainant is merely the purchaser of stock pledged to secure a debt. That the debt happens to be the debt of Ford is of no consequence. When Ford entered into a conspiracy to defraud the complainant, he certainly was not representing the complainant. The weight of authority is to the effect that a pledgee of stock is entitled to have his rights protected against those who would by chicanery sequester his goods.

In *Cream City Mirror Plate Company* v. *Coggeshall*, 142 Wis. 651, 126 N. W. 44, 135 Am. St. Rep. 1091, the Supreme Court of Wisconsin held:

"One who has taken corporate stock as collateral security for a loan is entitled, pending the maturity of the debt, to protection against the squandering of the assets of the corporation by his debtor, who is practically in control of the company."

Mr. Freeman, in a note to *Andrews Co.* v. *National Bank of*

*Columbus*, 129 Ga. 53, 58 S. E. 633, 121 Am. St. Rep. 186, 12 Ann. Cas. 616, has this to say:

"A pledgee of corporate stock has such an interest therein as entitles him to be heard in a court of equity concerning the preservation and protection of the assets and property of the corporation. His rights in this respect would seem to be essentially the same as those of the owner of stock, for a loss of corporate assets must result in a depreciation of the value of the stock and a consequent impairment of his security."

In 6 Thompson on Corporations (3d Ed.) sec. 4258, it is said:

"The pledgee has a right equal with the pledgor to appear and protect in the courts his interest in the stock and prevent a dissipation of corporate assets."

Whether we denominate the complainant a pledgee or a stockholder makes little difference in this case. There was a fraudulent effort upon the part of Crump and Ford to destroy the value of complainant's property. In equity and good conscience this should not be permitted.

In *Murrin* v. *Archbald, etc., Coal Company*, 232 N. Y. 541, 134 N. E. 563, 564, a similar question is discussed. There it is said:

"Although the plaintiff was not a stockholder at the time of the sale, he had such an interest in the stock to the knowledge of every one, that when he later acquired the pledged stock, he might under the peculiar circumstances of this case equally resist. He, in reality, was the one injured. By a conspiracy he was deprived of the control of the corporation, which control formed part of the value of the pledge. The action was taken, not to benefit the corporation but to injure the plaintiff and to deprive him of what he was entitled to acquire when the pledge was sold. The consent of Newton did not estop him. At the time it was given there was no privity between them."

The first assignment of error is without merit.

It is further contended by appellants that the court erred in holding that the five shares of stock issued to Cogbill and the twenty-five shares of stock issued to Crump should be cancelled.

It is an undisputed fact that when this stock was issued only Crump and Ford composed the board of directors. There was no compliance whatever with section 3853 of the Code, as amended by Acts 1926, ch. 186, which provides:

"The business of every corporation organized under the provisions of this chapter shall be managed by a board of directors of such number, not less than three, as may be prescribed by the certificate of incorporation or the by-laws of the corporation. They shall hold office, unless sooner removed by the stockholders, for the term fixed by the certificate of incorporation or by-laws and until their successors are respectively elected and qualified, and a majority of them shall constitute a quorum for the transaction of business."

While it is contended that Cogbill was elected a director, there is no evidence that he ever qualified or participated in any of the meetings. It does affirmatively appear that Cogbill did not participate in the meeting when the thirty shares of stock were issued.

In the petition of appellants this is said: "it is frankly conceded that, as a general proposition, the voting of the twenty-five shares of treasury stock to Carlton A. Crump could not be sustained for the reason that Crump was an interested party."

Appellant seeks to avoid the application of the rule by reliance upon the proposition that only creditors and stockholders could object to the issuance of the stock and that complainant is neither a creditor nor a stockholder. In our discussion of the first assignment of error we have concluded that complainant did have the right to test the validity of the issuance of the treasury stock to Crump and Cogbill. In view of the mandatory provisions of section 3853 of the Code, *supra*, that there should be at least three directors, it is apparent that the attempted distribution of stock to Crump and Cogbill was null and void. If the statute did not conclude the question, it is admitted that Crump was an interested party. This being true, his act in participating in the alleged meeting of the directors is a nullity.

The rule as to the duty of a director is clearly stated in 2 Thompson on Corporations, p. 702, sec. 1261. It is:

"In the absence of express authority it is well settled that a minority of the board cannot legally transact business, and the acts of such minority will not be valid. In such cases, generally, such acts of a minority are not voidable only, but they are said to be void. Not only are such acts void, but they are not subject to ratification."

In *Marcuse* v. *Broad-Grace Arcade Corp.*, 164 Va. 553, 180 S. E. 327, 335, 101 A. L. R. 217, this court quoted with approval from Thompson on Corporations, vol. 2 (3d Ed.) section 1257, as follows:

"The cases are practically unanimous on the proposition that a director who is personally interested in a given proposition, or as to any matter pending before the board, is disqualified from acting and cannot be counted in estimating the quorum * * *.

"A director who is disqualified by personal interest from voting on a particular matter before the meeting, cannot be counted for the purpose of making a quorum or a majority of the quorum. The act done is invalid where his presence is necessary to constitute a quorum, or where his vote is necessary to the passage of the resolution regardless of the fairness or good faith of the transaction."

The next assignment of error is:

"The court erred in holding that Carlton A. Crump was personally liable for the Three Thousand Dollars ($3,000) drawn by Herbert M. Ford out of the treasury of the corporation and wrongfully charged by Ford, the book-keeper, to the account of Carlton A. Crump."

It is clearly shown that $3,000 of the funds of the Hopewell Oil Company, Incorporated, were illegally withdrawn from the treasury. This amount, comprising various items, was first charged on the books of the corporation to Crump. After an inspection of the books of the corporation by the attorney for complainant, the account was changed by charging this amount to Ford. After this was done, Ford, though insolvent, executed his note in payment of his alleged indebtedness, with the full knowledge and consent of Crump, and Crump was relieved of any liability to the corporation. Ford testified that he was not on the payroll of the corporation, was not due any

money by the corporation and that he participated in this illegal transaction.

There is no merit in this assignment of error.

■ The action of the chancellor in referring to a commissioner the question of the legality of payments made to Crump as salary is without error.

■ The last assignment of error challenges the action of the chancellor in refusing to enter judgment for $3,000 against Ford.

In our opinion this question is not raised by the pleadings and need not be discussed.

Upon the whole case, after due consideration of all the assignments of error, we are of opinion that the decree complained of is plainly right and should be affirmed.

*Affirmed.*