534 So.2d 199 (1988)
John T. GIBSON, Sr.
v.
Donald G. MANUEL.
No. 58963.
Supreme Court of Mississippi.
November 16, 1988.
J. Robertshaw, Robertshaw, Terney, Noble & Smith, Greenville, for appellant.
Kenney M. Swain, Swain & Swain, Greenville, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This interlocutory appeal wherein time is of the essence asks that we articulate the duties of a corporate officer and sole shareholder owed to a pledgee of his shares. The pledgee's legitimate concern is that the pledgor/officer has disposed of the corporate assets out of the ordinary course of business and without receiving fair value in exchange. This, of course, has rendered pledgee's security worthless.
The trial court relied upon the sales and pledge agreement between the parties and held the pledgor entitled to do as he did. Because of the Court's failure to perceive and enforce the pledgor/officer's fiduciary duties of care and loyalty to his pledgee, we reverse and remand.

II.
In the beginning John T. Gibson[1] of Greenville, Mississippi, was the owner of Clearwater Broadcasting Corporation (CBC). A Florida corporation qualified to do business in Mississippi, CBC's sole business was the operation of Radio Station WDDT in Greenville. WDDT broadcast on AM 900khz, and had experienced declining financial fortunes in the early 1980s. This fact and others led Gibson and his partner *200 to the view that the business should be sold.
In December, 1983, Gibson reached an agreement with Donald G. Manuel of Florida wherein all of CBC's outstanding shares would be sold to Manuel. The sale was consummated pursuant to a written "Memorandum of Sale" executed on March 5, 1984. The stated purchase price for the CBC stock was a sum equal to four hundred percent (400%) of the "book" assets of the corporation. This was so to account for the most valuable asset of the corporation, the FCC license to transmit.
In exchange for Gibson's transfer to him of all outstanding shares in CBC, Manuel executed an installment note in Gibson's favor and delivered it to him. Manuel's payments under the note aggregated $169,954.21 together with interest. To secure performance of his obligations under the note, Manuel pledged his newly acquired shares and in fact delivered to Gibson the certificate evidencing those shares. The agreement was structured so that the note would be paid out of anticipated earnings. It was unusual in one important respect. Gibson agreed that in event of default he would look solely to the collateral and that Manuel would have no personal liability for any deficiency. Manuel paid Gibson $4,985.79 at the time of closing.
Effective March 5, 1984, Manuel assumed complete control of CBC. Not only was he the owner of all outstanding shares, he was also elected president and treasurer of the corporation. Manuel made annual payments of $10,006.57 each on April 10, 1985, and 1986. He defaulted on his payment due April 10, 1987, and has paid Gibson nothing since that time.
On July 8, 1987, Gibson formally commenced this civil action by filing his complaint in the Circuit Court of Washington County. Gibson sought to accelerate the $150,000.00-odd balance on the note, to foreclose his security interest in the pledged stock, and "such other and further relief as the court deems just and proper."
Shortly thereafter, as the parties were engaged in pretrial discovery, Gibson became aware through a radio trade publication that WDDT's license to transmit was to be transferred from a corporation known as Clearwater Communications Corporation (CCC) to a corporation known as Clyma Communications, Inc. This was Gibson's first knowledge that CBC no longer held the FCC license. Upon further investigation Gibson learned that Manuel had effectively stripped CBC of all of its assets and that a new corporation, CCC, had assumed the ownership and operation of WDDT. In April of 1984, Manuel had caused CBC to dispose of a storefront building located on Main Street in Greenville. In May of 1987, after the third installment on the note had matured but prior to the filing of the lawsuit, Manuel caused CBC to deed to CCC the WDDT broadcasting site including its equipment.
On September 21, 1987, Gibson moved for a preliminary injunction to prevent the sale of the license to Clyma Corporation and to restore the assets of CBC. See Rule 65(a), Miss.R.Civ.P. The Circuit Court heard the motion ten days later.[2]
At the close of the testimony the Circuit Court denied Gibson any relief. The Court emphasized the provision of the sales agreement that Gibson would look "solely to said stock as collateral for this note and maker shall not be liable for payment of any deficiency between the balance due hereunder and the value of said stock." The Court went on to observe that "I don't know whether at the time of the execution of these documents it was the intent of Mr. Manuel to proceed to loot the corporation, but the documents as drafted and signed certainly gave him the opportunity to do so. And the sellers' failing to take any mortgage against the assets of the corporation cannot be heard now to complain about action taken by Mr. Manuel which they expressly agreed to."

*201 III.
Gibson subsequently filed a motion for an interlocutory appeal. This motion was granted by the Circuit Court. See Rule 5, Miss.Sup.Ct.Rules.[3] In July, 1988, Gibson moved for an expedited hearing because WDDT was off the air and the license expires in June of 1989. Renewal of the license is unlikely unless WDDT returns to the broadcast airways, hence the urgency in this matter.
Interlocutory appeals should be granted only when a substantial basis exists for a difference of opinion on a question of law. American Electric v. Singarayar, 530 So.2d 1319, 1321-23 (Miss. 1988).
[A]n interlocutory appeal ought ordinarily be granted only where at its core the question concerns a dispute regarding the content of the applicable law, a dispute to which there is a substantial basis for a difference of opinion ...
American Electric, 530 So.2d at 1323. The question presented today, the common law rights of a pledgee of corporate stock vis-a-vis a pledgor who is an officer and controlling shareholder of the corporation, is in a very real sense directed toward "a dispute regarding the content of the applicable law." There is no clear law in this state resolving the point.
As a practical matter the Circuit Court's October 14, 1987, order leaves the parties with little else to litigate, though formally all that has happened is that the preliminary injunction has been denied. Compare First United Bank v. Philmont Corporation, 533 So.2d 449, 452, (Miss. 1988). Given the ruling of the Circuit Court, the nature of the question presented, and the urgency of the situation in which the parties find themselves, we hold this case ripe for review and move to the merits.

IV.
The outcome determinative question is whether Manuel had a duty  and Gibson a right  that the corporation, Clearwater Broadcasting Corporation, not be "looted". As sole shareholder and as president and treasurer, Manuel held effective control of CBC. Gibson held a security interest in the Manuel's shares. That security interest was perfected by possession. Miss. Code Ann. § 75-9-305 (1972). What is important is that Gibson's security interest had attached and had become enforceable. Miss. Code Ann. § 75-9-203(1) and (2) (1972). Beyond this, the Uniform Commercial Code as enacted in this state tells us little.
Unless displaced by the UCC, common-law principles "shall supplement its provisions." Miss. Code Ann. § 75-1-103 (1972), Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 674-75 (Miss. 1987); J.L. Teel Co. v. Houston United Sales, Inc., 491 So.2d 851, 861 (Miss. 1986). Common law principles defining the rights and duties arising from the relationship of pledgor/pledgee  where the pledgor is an officer and has effective control of the corporation  are the body of law to which we must direct our attention.
We have no case addressing the matter. Under analogous circumstances our law of corporations is well settled. We refer to the duties fiduciary in nature that all corporate officers owe to shareholders. Those duties include one to exercise utmost good faith and loyalty in discharge of the corporate *202 office.[4]Ellzey v. Fyr-Pruf, Inc., 376 So.2d 1328, 1332 (Miss. 1979). Corporate officers are wholly subject to this duty when they deal with corporate property. Frierson Building Supply Co. v. Pritchard, 253 Miss. 541, 554, 176 So.2d 301, 306 (1965). Corporate officers who participate in illegal diversions of corporate assets are liable therefor. Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 769, 89 So.2d 799, 828 (1956).
There is no reason on principle why a corporate officer's duties of care and loyalty should not extend to pledgees of corporate shares as well as to shareholders. Beneficial and legal holders would seem similarly situated. A pledgee holding a security interest in corporate shares is a potential shareholder. He has the same interest and concern as a shareholder that the corporate affairs be managed properly. If the officers default, the pledgee suffers harm generically not unlike that experienced by the shareholder.
Beyond our borders we find a considerable body of case law accepting the proposition that a pledgor of corporate stock, when in control of the corporation, has the affirmative duty to preserve the corporate assets for the benefit of the pledgee. For example,[5] in Weingand v. Atlantic Savings & Loan Association, 1 Cal.3d 806, 83 Cal. Rptr. 650, 464 P.2d 106 (1970), the Court said that
The pledgee of corporation stock has such an interest in the stock to entitle him to be heard in a court of equity concerning the preservation and protection of the assets and property of the corporation, his rights in this respect being essentially the same as those of an owner of stock for the loss of corporate assets; and the loss of corporate assets results in a depreciation of the value of the stock and a consequent impairment of his security.
464 P.2d at 112.
The plaintiff pledgees in the case of Cannon v. Parker, 152 F.2d 706 (5th Cir.1945) (applying Texas law), were seeking to rescind certain transactions wherein the director/pledgor had sold many corporate assets. In upholding the pledgee's standing to challenge the transactions, the court stated:
Plaintiffs as pledgees of stock were seeking to have improper withdrawals of corporate assets restored after a full audit should determine them, and to take the assets from the unfaithful officers and protect them by a receiver if found necessary.
152 F.2d at 708.
Where  as here  the pledgor is in effective control of corporate operations, many courts have held the pledgor's duties to the pledgee fiduciary in nature. Giblin v. Murphy, 97 A.D.2d 668, 469 N.Y.S.2d 211 (1983), is illustrative. The plaintiff had sold a hardware business to the defendant Murphy, securing Murphy's payment of the purchase price with a pledge of all of the stock in the enterprise, Westwood Corporation. In the months that Murphy controlled *203 the corporation, he drove Westwood into bankruptcy by granting excessive credit to his customers and by paying himself an exorbitant salary. The court recognized in pledgee Giblin a right of action against the directors of the corporation, stating that
We conclude that the trial court properly found the individual defendants liable for wrongful dissipation of Westwood assets. Plaintiff, pursuant to the pledge agreement, possessed a beneficial interest in Westwood's stock. The individual defendants, as directors and officers of Westwood, had a fiduciary duty to protect plaintiff's stock interest and were required to discharge that duty "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." Here plaintiff properly sued the individual defendants directly for their wrongful actions; their duty of care ran to plaintiff not only as directors of Westwood obliged to protect plaintiff's beneficial stock interest, but also as pledgors obliged to protect the pledge of Westwood's stock.
469 N.Y.S.2d at 215. Across the continent, Gustafson v. Gustafson, 47 Wash. App. 272, 734 P.2d 949 (1987) is to like effect. See also 12A Fletcher Cyc. Corp. § 5649 (Perm.Ed. 1984 & Supp. 1988).
The essence of the decision below is Gibson had somehow waived or released any right he may have had that the value of CBC's assets be protected. The Court grounded its view in Gibson's decision to take a stock pledge  as distinguished from a security interest in corporate assets  to secure the purchase money note.
The March 5, 1984, sales agreement provides, in paragraph 4, that the pledged shares stand "as full and complete collateral" and that in event of default Manuel should "have no liability other than surrender of the stock." Paragraph 7 provided that Gibson "waives any right, title, interest or claim in the assets of the corporation or any other right or claim against the corporation." Then paragraph 8 provided that Manuel "shall have the right to sell or assign his right, title and interest in and to the corporation or the business known as the radio station WDDT."
Close examination makes clear that the sales agreement in no way empowers Manuel to loot the corporation with impunity. Paragraph 4 merely spells out the meaning of the stock pledge as the security interest of choice. Manuel was given no authority to impair the value of that collateral. Paragraph 7's waiver of rights in CBC's assets gives Manuel no help. Gibson makes no claim against corporate assets. Rather, Gibson demands that Manuel, as owner of the pledged shares  and as the individual in control of the corporation  not impair the value of those shares. Paragraph 8's power to sell similarly affords Manuel no defense.
The key to the error below is the Court's failure to perceive Manuel's fiduciary duties as president of CBC to conduct his office with ordinary prudence and with all good fidelity to the end that the value of its shares be maintained. True, Manuel had authority to sell CBC property. His duty to pledgee Gibson was to exercise good faith and diligence to see that any such sale was value for value. Manuel's sale of the physical assets of WDDT was not sinful per se, only his failure to secure for CBC fair value therefor. And the same of his transfer of WDDT's license to CCC. The sales agreement left Manuel free to transfer these assets.[6] Our law directed that CBC's balance sheet not take a beating in the process.
By virtue of his position as president of CBC, augmented by his complete control of corporate affairs emanating from his being sole shareholder, Manuel owes pledgee Gibson the ordinary duties of loyalty and care. Those duties derive from the positive law of this state. Their content and particulars are the same as those duties an officer or director owes to shareholders. From the facts before us, it seems quite clear that Manuel has violated his duties in the premises. *204 The Circuit Court erred in finding that Gibson had no right of action against Manuel, that he could not enjoin the continuing dissipation of the assets of CBC nor compel restoration.
We recognize that the grant or denial of a preliminary injunction is a matter with respect to which the trial court has considerable discretion. American Electric v. Singarayar, 530 So.2d 1319, 1324 (Miss. 1988). Where, as here, that discretion has been exercised against the backdrop of an erroneous legal standard, we will not hesitate to reverse. See Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985). By definition such constitutes an abuse of discretion.
We are much less confident on the matter of relief. The record before us is not adequate that we may with confidence direct appropriate relief. We believe it sufficient unto the day that the order entered by the Circuit Court on October 7, 1987, be vacated and that this matter be restored to the active docket of the Circuit Court of Washington County, Mississippi, for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] Betty W. Carter was at one time a shareholder in CBC, although Gibson took the lead in management decisions and in the subsequent sales transaction. Carter has since sold her interest in CBC to Gibson and has no interest in the outcome of this action.
[2] This motion lies within the subject matter jurisdiction of the Circuit Court, pendent variety. See American Electric v. Singarayar, 530 So.2d 1319, 1320 n. 1 (Miss. 1988); Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985); and Rule 65(e), Miss.R.Civ.P.
[3] The Circuit Court's order granting this interlocutory appeal was entered October 14, 1987. Gibson filed his notice of appeal the next day. The record was not filed with this Court until March 18, 1988. The new Mississippi Supreme Court Rules formally govern only those appeals perfected on or after January 1, 1988. See subparagraph (d) of Order In The Matter of the Adoption of The Mississippi Supreme Court Rules, entered June 15, 1987. The Official Comment to Rule One provides:

These rules will take effect on January 1, 1988, and will govern all proceedings in appeals and other proceedings subsequently brought and all such proceedings then pending, except to the extent that in the opinion of the Court their application in a particular proceeding then pending would not be feasible or would work injustice, in which case the former procedure may be followed.
This is one of those pre-Rules cases where no reason is apparent why we should not proceed according to our new Rules. See Johnson v. Ladner, 514 So.2d 327, 328 (Miss. 1987). Manuel offers no objection to the interlocutory appeal. But see Craig v. Barber, 524 So.2d 974, 976 n. 3 (Miss. 1988).
[4] Compare Miss. Code Ann. § 79-4-8.42 (Supp. 1988), effective January 1, 1988; see generally, Holmes, The Revised Model Business Corporation Act and Corporate Law Reform In Mississippi: Part One, 56 Miss.L.J. 165, 188-211 (1986).
[5] Beyond the cases discussed above, there is a plethora of pre-UCC authority recognizing the duty of a pledgor to avoid dissipation of corporate assets in contexts resembling today's and in ways legally relevant. Baldwin v. Canfield, 26 Minn. 43, 1 N.W. 261, 272 (1879); Andrews Co. v. National Bank of Columbus, 129 Ga. 53, 58 S.E. 633, 636 (1907); Gorman-Wright Co. v. Wright, 134 F. 363, 364 (4th Cir.1904); Scott v. Flint River Pecan Co., 159 Ga. 668, 126 S.E. 769, 774 (1925); Green v. Hedenburg, 159 Ill. 489, 42 N.E. 851, 853 (1896); General Ice & Coal Co. v. George, 214 Ind. 518, 14 N.E.2d 1002, 1003 (1938); Peoples State Bank v. Jacksonian Hotel Co., 261 Ky. 166, 87 S.W.2d 111, 117-18 (1935); Brown County Bank v. Freie Presse Printing Co., 174 Minn. 143, 218 N.W. 557, 559 (1928); Snyder v. Eagle Fruit Co., 75 F.2d 739, 742-43 (8th Cir.1935) (applying Missouri law); Murrin v. Archbald Consolidated Coal Co., 232 N.Y. 541, 134 N.E. 563, 564 (1921); First National Bank v. Multnomah State Bank, 87 Ore. 423, 170 P. 534, 535-36 (1918); Talcott v. Margulis, 166 Pa.Super. 267, 70 A.2d 367, 368 (1950); Enterprise Trading Co. v. Bank of Crowell, 167 S.W. 296, 298 (Tex.Civ.App. 1914); Crump v. Bronson, 168 Va. 527, 191 S.E. 663, 666 (1937); Kneeland Investment Co. v. Berendes, 81 Wash. 372, 142 P. 869, 872 (1914); Cream City Mirror Plate Co. v. Donahue, 142 Wisc. 651, 126 N.W. 44, 45 (1910).
[6] We assume, without deciding, that Gibson had authorized sales out of the ordinary course of business.