## J. V. WILLIAMS v. E. E. DAVIS AND OTHERS.[1]

December 26, 1930.

No. 28,190.

[1]Reported in 234 N. W. 11.

*Johnson & Schaefer,* for appellant.
*Hall & Catlin,* for respondents.

HOLT, J.

Upon findings in favor of defendants a judgment was entered, from which plaintiff appeals.

The action is for conversion of $18,000 belonging to Lynd Farmers Elevator Company by defendants, the members of the board of directors of said company, alleged to have occurred some time after the summer of 1921, when the elevator buildings and certain property therein were sold and transferred to the Farmers Community Elevator Company, a corporation organized in 1920 and which had been a tenant of the Lynd Farmers Elevator Company for about a year of the property it purchased.

The facts in brief are these: The Lynd Farmers Elevator Company, now in the hands of plaintiff as receiver, was organized in 1909 and did the usual grain elevator business at the little village of Lynd from then on until the summer of 1920. It owned two elevator buildings with equipment; stored and dealt in grains; it hedged to some extent for itself and others; and it bought and sold fuel and salt. It had accounts with grain commission firms in the Twin Cities. An audit of the company in July, 1920, revealed heavy losses during the year then past, and on the face of the audit the company was insolvent. There were meetings of the stockholders and board of directors as to what course to pursue. Some of the stockholders and most of the board of directors, realizing that the company could not go on, organized the Farmers Community Elevator Company, which took a lease of the elevator buildings and equipment, agreeing to pay $150 rent per month. In June, 1921, these properties were sold, as stated, to the tenant. There was grain not sold and accounts, notes, and bills receivable retained. What the directors received upon the sale of elevator buildings with equipment was not cash but the promissory notes of the stockholders given for the purchase of stock in the new com-

pany. However, two or more of the defendants herein, directors of the old company, mortgaged their farms and thus obtained cash for which they purchased the notes given for the stock. The proceeds, the $18,000 which plaintiff alleged to have been converted, were used by the defendants to settle with the grain commission firms in the Twin Cities which held the obligations or notes of the company. These grain commission firms were prevailed upon to settle their claims for about one-half of the face value, and virtually the whole of the amount realized from the sale of the elevator buildings and equipment was thus consumed. The grain, cash on hand, notes, accounts, and bills receivable were used in paying for outstanding grain storage tickets and other obligations of the company as far as those resources reached. Three claims that had existed prior to 1920 were not paid in full. These were put in judgments in 1922, and we assume that in proceedings to enforce payment thereof the Lynd Farmers Elevator Company was placed in the hands of one Kempton as receiver, which culminated later in a judgment entered in 1925 dissolving the company. Kempton was succeeded by the present plaintiff as receiver.

There are 16 paragraphs of findings of fact, every one of which except the twelfth is challenged as unsupported by the evidence. A great many of the facts found are undisputed; and support is found in the record for all the findings. It may be added that only a finding that defendants had not converted the $18,000 or any part thereof would have been enough to support the judgment in their favor. The ninth and tenth paragraphs contain the controlling findings of fact, and are in substance:

That on November 16, 1921, defendants as a board of directors of Lynd Farmers Elevator Company in good faith and without any intent on the part of either or any of them to hinder, delay, or defraud any other creditor settled with the grain commission firms for all amounts due them on the basis of about 50 per cent of the amounts due, paying in all $17,910 with the proceeds received from the sale of the elevators and equipment to the newly organized elevator company; and the board of directors also sold some other

property belonging to the old company and collected some indebtedness due it and with the proceeds paid attorneys' fees and paid a large number of farmers who held grain storage tickets and $1,500 to one of the three creditors who subsequently obtained judgment for the balance, as above referred to; "that none of the defendants herein, either as individuals or as directors of said old elevator company, ever retained any part of the purchase price of said elevator buildings and equipment or any other property belonging to said old elevator company," but used all moneys secured by sale or collections to pay the just obligations of the elevator company; and in so doing each acted in good faith and without any intent to defraud, hinder, delay, or wrong the stockholders or creditors of the company. It is true, some of the directors were accommodation indorsers on the company's notes which the grain commission firms held and which were settled as above stated; but that proves nothing else than that those directors did all in their power to assist the company, and certainly it was to the interest of all creditors that defendants succeeded in effecting a settlement with those firms for about half of their just claims.

We think no fault may be found with the ninth and tenth findings; in fact, findings to the contrary would have no substantial support in this record.

A great many legal principles urged as determinative against defendants, despite the facts above noted in their favor, have no application to the simple issue of conversion presented by the pleadings. Plaintiff by suing for the conversion of the purchase price of the elevator buildings and equipment must concede or recognize that there was a valid sale at a fair or adequate price and that good title passed to the purchaser. In other words, the sale, so far as plaintiff is concerned, is ratified however irregular it may have been. Nor do we think that the fact that the company incurred debts greatly exceeding the limit set in the articles of incorporation has any bearing. The evidence does not show that the debts of the company which were compromised and paid were contracted after the debt limit was reached. Both plaintiff and defendants labored

under difficulties at the trial, for the books of account kept by the company could not be had. The evidence indicates that they came into the possession of the first receiver but never reached the hands of the plaintiff. So far as this record goes, the total $18,000, representing the purchase price of the elevator buildings and equipment, went to pay honest debts of the company. Neither law nor morals forbids a corporation to repay what it has obtained or borrowed from another even though obtained or borrowed ultra vires. In fact the authority cited by plaintiff suggests that the corporation thus enriched by the funds of another may be compelled to return or restore the same in an action for money had and received. Kraniger v. Peoples Bldg. Society, 60 Minn. 94, 61 N. W. 904.

Plaintiff also contends that defendants held the $18,000 as trustees for all the creditors equally. The decisions are not in accord as to the right of directors of insolvent corporations to prefer creditors. The majority of the courts hold that this cannot be done lawfully. But there are courts of high standing holding to the contrary: Rockford W. G. Co. v. Standard G. & M. Co. 175 Ill. 89, 51 N. E. 642, 67 A. S. R. 205; Henderson v. Indiana Tr. Co. 143 Ind. 561, 40 N. E. 516; Garrett v. Burlington Plow Co. 70 Iowa, 697, 29 N. W. 395, 59 Am. R. 461; Bank of Montreal v. J. E. Potts S. & L. Co. 90 Mich. 345, 51 N. W. 512; Sandford F. & T. Co. v. Howe, Brown & Co. Ltd. 157 U. S. 312, 15 S. Ct. 621, 39 L. ed. 713. A full annotation of cases follows Union Coal Co. v. Wooley, 19 A. L. R. 312 (54 Okl. 391, 154 P. 62). But it is not necessary to pursue this subject, for this action is not to recover a preference but one against defendants for conversion to their own use of the $18,000 mentioned, all of which went wholly to compromise and pay just debts of the company.

The court also found on sufficient evidence that on June 4, 1921, the three judgment creditors who through plaintiff are seeking to hold defendants for conversion had notice of the sale of the elevator buildings and equipment. They did not have their claims presented to or allowed by plaintiff until 1925, and this action was not commenced until March 26, 1928. The evidence shows that defendants paid part of one of these claims. It is true that there is

no specific finding that these creditors knew the exact time the $18,000 was paid out to the creditors. All was in fact so paid out more than six years prior to the commencement of this action. There being no fraud or concealment charged or proved, the action is not within G. S. 1923 (2 Mason, 1927) § 9191(6). Nor, upon plaintiff's theory of an implied trust, does it fall within subd. 7 of said section. Stillwater & St. P. R. Co. v. City of Stillwater, 66 Minn. 176, 68 N. W. 836; Jones v. Hammond, 168 Minn. 131, 209 N. W. 864. The action to participate pro rata in the $18,000 accrued, if at all, to these three creditors represented by plaintiff when it came into the hands of defendants. In our opinion the statute of limitation had run against the cause of action when this suit was begun.

Plaintiff cites G. S. 1923 (2 Mason, 1927) §§ 7465, 7489, 8011, but plainly this action is not brought to seek redress under either one of these sections, nor are the decisions relative to enforcement of rights and obligations under either or all three of those sections applicable in this action at law for conversion. Cases like Rice v. Madelia Farmers Warehouse Co. 78 Minn. 124, 80 N. W. 853; Segal v. Davis, 166 Minn. 265, 207 N. W. 620; Brown County Bank v. Freie Presse P. Co. 174 Minn. 143, 218 N. W. 557, and numerous earlier cases cited by plaintiff, are so obviously different on the facts that there is no occasion to point out why they can have no bearing upon a decision herein. Upon the pleadings and the well sustained findings of fact there could be no recovery against any defendant.

The judgment is affirmed.